ANGELO and LYNDA CARDELLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
CARDELLO v. COMMISSIONER
Docket No. 12147-77.
United States Tax Court
T.C. Memo 1978-507; 1978 Tax Ct. Memo LEXIS 7; 37 T.C.M. (CCH) 1851-83; December 26, 1978, Filed *7 Angelo Cardello and Lynda Cardello, pro se. Michael F. Patton, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the years and in the amounts as follows: Deficiency
Additions to Tax, Taxable Year
in
I.R.C. 1954 Ended
Income Tax
Sec. 6653(a) [1]
1974
$ 521.33
$ 26.07
1975
474.71
23.74
The issue for decision is the amount of income petitioner Lynda Cardello received as tips and whether respondent properly determined an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Wethersfield, Connecticut at the time of the filing of the petition in this case, filed a joint Federal income tax return for each of the calendar years 1974 and 1975 with the Internal Revenue Service Center at Andover, Massachusetts. During the years 1974 and 1975, Lynda Cardello (hereinafter petitioner) was *8 employed on a part-time basis as a waitress at "The Clam Box," a restaurant located in Wethersfield, Connecticut. On their 1974 and 1975 income tax returns petitioners reported gross income of $18,540.03 and $19,923.66, respectively, of which amounts $1,791.45 and $2,463.70 were received by petitioner as a result of her employment at "The Clam Box" (hereinafter restaurant) during these years. These amounts included $662.15 and $1,182.09 received as tips by petitioner during the years 1974 and 1975, respectively. The tips, as reported by petitioners on their tax returns were based on amounts shown on time cards of petitioner kept by the restaurant. These time cards were kept on a weekly basis. The cards for each week showed the hours petitioner worked that week, an amount for meals and an amount of declared tips. On the bottom of each time card was the following printed statement: I hereby attest that as a service employee I have received gratuities during this pay period not less than $2.00 per day (part time) or $10.00 per week (full time) and acknowledge that the amount specified above as gratuities has been received by me and applied as part of Minimum Fair Wage of $1.85 *9 per hour. [2]
Also, at the bottom of the time card was a computation multiplying the minimum fair wage per hour by the number of hours worked and subtracting therefrom an amount shown as "total deductions" which was composed of two figures. The first figure was always the same as the amount shown at the top of the card as "meals." The second figure was in a few instances the amount shown at the top of the page as declared tips but usually was a lesser amount than the amount shown as declared tips. [3] The remainder, after the subtraction made from the computation of minimum wage times hours worked, was designated as "balance due." Most of these cards were signed by petitioner underneath the above-quoted statement and some of them were also signed at the top of the card under the words "Declared Weekly Tips." Generally at the end of the week petitioner inserted the figure for declared tips at the top of the card primarily on the basis of memory, but in a number of instances this amount was inserted by someone else. The amount included as declared tips was not based on a record kept by *10 petitioner or by the restaurant of the tips actually received by petitioner during the week but rather was an estimate. Respondent's revenue agent made an investigation of the records of the restaurant both in connection with the income tax returns filed by the restaurant and the tax returns filed by the various waitresses who worked at the restaurant. In the course of this investigation respondent's agent computed the total sales of the restaurant for each of the years 1974 and 1975 from the records of the company. From these total sales respondent's agent subtracted the total amount of carryout sales and sales of such items as cigarettes, which would normally not be included on sales checks made out by the waitresses, to *11 determine total sales made by the waitresses in each year. Respondent's agent then selected three weeks out of each of the years 1974 and 1975 scattered throughout the year, but not including a week in which a major holiday fell, to use to compute the percentage of tips shown on charge sales. For each of these three weeks respondent's agent listed all charge sales, whether a regular restaurant charge or a credit card charge. He then listed separately the food and beverage charge and the tips shown on the charge slips. During each of the years here in issue the charge sales that showed any tips at all generally showed a tip of 15 percent or better. However, some charge sales showed no tips and under the column "tip" the agent entered "0." The charge sales were totaled for each weekly period in the year and for the entire three weeks each year. The amount of tips shown, since some charge sales showed no tips, was approximately 12.8 percent of the amount of the sales of food and beverages shown on the charge slips in 1974 and approximately 12.9 percent thereof in 1975. In each of the years 1974 and 1975, respondent's agent, on the basis of his computation from charge sales, determined *12 a tip percentage of 12 percent and multiplied this percentage by the total sales computed in each year as having been made by all waitresses to obtain total computed tips received by all waitresses. He then divided the total computed tips by the total wages paid to all the waitresses with a resulting figure of $2.46 of tips per $1.00 of salary in 1974 and $2.43 of tips for $1.00 of salary in 1975. The agent then determined the amount of tips received by each waitress by multiplying the wages other than tips received by that waitress by $2.46 in 1974 and $2.43 in 1975. In his notice of deficiency, which was based on the agen's computation, respondent increased the income as reported by petitioners by $2,566.16 in 1974 and $2,470.39 in 1975, which amounts were explained as unreported tip income of petitioner. OPINION Petitioner does not contend that she kept any record of tips other than that shown on her time cards. However, she contends that since she was a relatively new employee in the years here in issue and a part-time worker, her tips would probably not be as high as the average tip in the restaurant. She stated that even though stations were rotated by the restaurant *13 she did not believe the newer girls or part-time waitresses received tips as high as the older and full-time waitresses. However, petitioner had nothing but her own opinion to substantiate these contentions. She did not keep records of the tips she received. In our view, the system used by respondent in determining the tips received by all waitresses in the restaurant is very fair. In the computation of the percentage tips on charge sales the assumption was made that where no tip was shown on the charge slip no tip was left, although respondent's agent recognized that in fact a customer often left a cash tip on the table and only charged the food and beverage purchased in the restaurant. Also, respondent used an average tip of eight or nine-tenths of one percent less than the average tip shown on the charge sales even though zero had been used as the amount of tip left on sales where no tip was entered on the charge slip. Certainly, we recognize that various waitresses receive different amounts as tips. However, when a waitress, as did petitioner here, has failed to keep an accurate record of her tips, the reconstruction as made here by respondent is proper. In fact, the percentage *14 of reconstructed tips appears to be on the low side. However, neither respondent's agent nor the respondent's auditor could reconcile the amount of the tip income computed for petitioner with the stipulated amount of her wages less tips. [4] The stipulated amount of wages other than tips received by petitioner should have been used in the computation of her tips for each year here in issue. We have determined this amount by subtracting from the stipulated total amount of income reported by petitioner from her work as a waitress the stipulated amount reported as tips. On this basis we arrive at an amount of $1,129 of wages other than tips of petitioner for 1974 and $1,281.61 for 1975. On this basis the computed total tip income of petitioner for 1974 is $2,777 ($1,129 x $2.46). When the tip income $662of reported by petitioner for the year 1974 is subtracted from the total computed 1974 tip income of $2,777, the unreported tip income for 1974 is $2,115. The stipulated total wages received by petitioner, exclusive of tips in the year 1975, was $1,281.61. Multiplying this amount by $2.43 results in total tips received by petitioner for 1975 of $3,114. When the reported $1,182 of *15 tip income for 1975 is subtracted from $3,114, the total unreported tip income resulting is $1,932. We therefore hold that petitioner had unreported tip income for 1974 of $2,115 and unreported tip income for 1975 of $1,932. Petitioner has totally failed to show error in the addition to tax under section 6653(a) for negligence. In fact, the record shows that petitioner was negligent in failing to keep proper records of her tips. We therefore sustain respondent's *16 determination of an addition to tax under section 6653(a) for each year. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The $1.85 was changed to $1.91 as of May 7, 1974, and to $2.01 as of January 14, 1975.↩
3. The total amount of the hours worked by petitioner in 1974 multiplied by the applicable minimum wage was $1,780.35. The total amount of declared tips shown on the top of the time cards for 1974 was $662.15. The total deductions from the amount of hours times the minimum wage was $666.27, composed of $183.02 of the weekly amounts which were the same in amount as meals at the top of the card and $483.25 of the other amount at the bottom of the card.↩
4. From our analysis of the time cards which are in evidence, we would conclude that petitioner actually included in income as "tips" only the amount of the deduction other than the deduction for meals from her hours worked times the minimum wage. In 1974 this figure is $178.90 less than the stipulated amount of reported tips which was the total amount of declared tips at the top of the page. If the lesser amount is used as reported tips, the computation of petitioner's unreported tip income as shown in the notice of deficiency appears to be correct. However, we accept the stipulation of the parties as to reported tip income for the purposes of this case, although there is some indication that it is incorrect.↩